**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02673-CMA-NYW

TIMOTHY KUZAVA, and
KATHY JO KUZAVA, *as assignees of Lyon Trucking, Inc. and Eric Kubby*,

      Plaintiffs,

v.

UNITED FIRE & CASUALTY COMPANY,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant United Fire & Casualty's ("Defendant" or "United") Rule 12(b)(1) Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings ("Motion to Dismiss" or "Motion"), filed November 15, 2017. [#12]. The undersigned Magistrate Judge considers the Motion to Dismiss pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated November 9, 2017 [#11], and the Memorandum dated November 16, 2017 [#13]. Having carefully reviewed the Motion and associated briefing, the applicable case law, the entire case file, and the comments offered during the February 9, 2018 Motion Hearing, this court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED. ALTERNATIVELY, to the extent that the presiding judge, the Honorable Christine M. Arguello, finds that this court has subject matter jurisdiction over some (but not all) of the claims in this matter, this court respectfully RECOMENDS that this matter be ADMINISTRATIVELY CLOSED pending the disposition of United's appeal to the Colorado Court of Appeals.

## BACKGROUND

Timothy Kuzava and Kathy Jo Kuzava (collectively, "Plaintiffs") initiated this action in the District Court for the City and County of Denver on September 6, 2017. [#6]. The following day, Plaintiffs filed an Amended Complaint [#8], the operative complaint in this matter. On November 8, 2017, United removed this action to federal court pursuant to 28 U.S.C. § 1332(a). [#1].

The facts giving rise to this matter involve an automobile accident between Mr. Kuzava and Eric Kubby [#7 at ¶ 5], which occurred near Avon, Colorado on or about June 7, 2013, [#12 at 2]. "At the time of the accident, Mr. Kubby was acting within the course and scope of his employment with Lyon Trucking, Inc., and was operating a truck owned by Lyon Trucking, Inc." [#7 at ¶ 6]. Plaintiffs subsequently filed suit against Mr. Kubby and Lyon Trucking, Inc. ("Lyon Trucking"), seeking damages for their injuries in Eagle County District Court, Case No. 2014CV30452 (the "Underlying Action"). [*Id.* at ¶ 10].

At the time of the accident, United insured Lyon Trucking and Mr. Kubby as an employee of Lyon Trucking. [*Id.* at ¶¶ 7–8]. United's insurance policy provided a $1,000,000 liability limit per accident; United also agreed to defend Lyon Trucking and Mr. Kubby in the Underlying Action. *See* [*id.* at ¶ 9; #12 at 2]. Plaintiffs made several unsuccessful settlement demands for the policy limit during the Underlying Action. [#7 at ¶¶ 13–18]. Though set for a two-week jury trial beginning June 20, 2016, Plaintiffs, Mr. Kubby, and Lyon Trucking agreed to arbitration in Denver to resolve the Underlying Action. *See* [*id.* at ¶ 20; #12 at 2–3]. Defendant then sought to intervene as a matter of right in the Underlying Action to bar the arbitration proceedings and to receive a declaration that it owed no further defense or indemnity obligations to Lyon Trucking and Mr. Kubby. [#12 at 3]. The Eagle County District Court

denied United's Motion to Intervene. [*Id.* at 4]. United therefore defended Lyon Trucking and Mr. Kubby at arbitration, but United itself elected not to participate in the arbitration proceedings. [#7 at ¶¶ 21–25].

The arbitration proceedings lasted "over 8 days," and resulted in an award of more than $3,000,000 to Plaintiffs—an award Lyon Trucking and Mr. Kubby were jointly and severally liable for. [*Id.* at ¶¶ 26–27]. The Eagle County District Court confirmed the arbitration award and entered judgment against Lyon Trucking and Mr. Kubby for the full amount of the arbitration award plus post-judgment interest. [*Id.* at ¶ 28]. Subsequently, Lyon Trucking and Mr. Kubby assigned to Plaintiffs the rights and interests in any and all present and future claims Lyon Trucking and Mr. Kubby may have had against United under its insurance policy, including the full judgment amount of the Underlying Action as well as state law claims for breach of contract and bad faith breach of an insurance contract (the "Agreement").[1] *See* [*id.* at ¶ 32]; *see also* [#12 at 3; #12-5 (assigning all claims to Plaintiffs in exchange for Plaintiffs' agreement not to execute or enforce the arbitration judgment against Lyon Trucking and Mr. Kubby)]. United has yet to pay any portion of the judgment entered against Lyon Trucking and Mr. Kubby. [#7 at ¶ 29].

Accordingly, Plaintiffs initiated the present action alleging claims against Defendant for breach of contract and bad faith breach of an insurance contract. [#7]. At oral argument, the Parties disagreed as to whether Plaintiffs had asserted a breach of contract claim based on the failure of the duty to defend as well as a failure of the duty to indemnify. [#35]. When asked by the court to clarify, Plaintiffs contended the Amended Complaint contained a separate cause of

---

[1] Such agreements are typically referred to as *Bashor/Nunn* agreements, aptly named after the Colorado Supreme Court cases allowing similar agreements both pre- and post-adjudication. *See Northland Ins. Co. v. Bashor*, 494 P.2d 1292 (Colo. 1972); *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010).

action for breach of contract arising from a failure to defend, but Defendant contended that such a separate breach could not lie because United, in fact, provided a defense to Lyon Trucking and Mr. Kubby in the Underlying Action. This court's review of the Amended Complaint indicates that, while the supporting paragraphs in the breach of contract claim refer to Defendant's obligation to defend and "provide competent counsel to advocate for Mr. Kubby and Lyon Trucking, Inc.'s best interests," [#7 at ¶¶ 35–36], the breach asserted arises not from a failure to defend but "failing and refusing to indemnify Mr. Kubby and Lyon Trucking, Inc. for any portion of the judgment entered against them in the Underlying Lawsuit." [*Id.* at ¶ 39]. Plaintiffs also allege that Defendant acted in bad faith throughout the Underlying Action because of its refusal to reasonably settle the claims when it had an opportunity to do so within the policy limits; wrongfully refusing to indemnify Mr. Kubby and Lyon Trucking; failing to reasonably investigate and evaluate the claims brought by Plaintiffs in the Underlying Action; moving to bifurcate the non-covered claims from the Underlying Action; and failing to reasonably communicate with Lyon Trucking and Mr. Kubby in the Underlying Action. [*Id.* at ¶ 44]. Plaintiffs contend that these actions were unreasonable, reckless, and negligent, causing damages and losses to Lyon Trucking and Mr. Kubby. *See* [*id.* at ¶¶ 43–47].

Relevant here, Defendant appealed the Eagle County District Court's denial of its Motion to Intervene, among other issues, on June 16 and August 16, 2017, respectively. [#12 at 4]. In its instant Motion, Defendant avers that Plaintiffs' breach of contract and bad faith breach of an insurance contract claims are not ripe for judicial review by this court given its appeal of the Underlying Action. [*Id.* at 6]. This is because, should United win its appeal, "thereby obtaining a decision that its intervention should have been granted before the [] arbitration commenced, that arbitration proceeding and the result thereof will be void as to United Fire, and all

proceedings in this Court (which are based upon the Award) will be nullified." [*Id.*]. As an alternative, United requests that this court stay the instant matter until the Underlying Action "becomes final and non-appealable." [*Id.*]. Plaintiffs oppose the requested relief, and argue that United's appeal of the Underlying Action has no effect on whether their claims in this action are ripe and that an indefinite stay of this action is unwarranted. [#22]. This court considers the Parties' arguments below.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See generally Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack, the court takes the allegations in the Complaint as true, but when reviewing a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

**ANALYSIS**

I.      **Subject Matter Jurisdiction**

Federal subject matter jurisdiction may exist in one of two ways. First, to invoke federal question jurisdiction under 28 U.S.C. § 1331, a plaintiff's well-pleaded complaint must either establish "that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotations and citation omitted). Second, under 28 U.S.C. § 1332(a)(1), federal courts "have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000 . . . and is between (1) citizens of different States." In removing this action to this District, Defendant invoked the court's diversity jurisdiction. [#1]. Plaintiffs suggest that the disposition of Defendant's Motion to Dismiss may divest this court of subject matter jurisdiction. *See* [#28]. Because this court has an independent obligation to assure itself that subject matter jurisdiction exists, I turn to Plaintiffs' supplemental briefing on this issue first.

Plaintiffs aver that Defendant's ripeness arguments address only the economic damages associated with the judgment in the Underlying Action. [#28 at 3]. Should the court then agree with Defendant on this point, the only damages remaining would be Plaintiffs' claims for "damage to credit and reputation by virtue of the judgment being entered, and in the case of . . . Mr. Kubby, non-economic damages[,] including the stress of having the judgment entered against him." [*Id.*]. Under this scenario, Plaintiffs argue the court would be divested of diversity jurisdiction because United has not demonstrated that each Plaintiff seeks damages in excess of $75,000 and, therefore, immediate remand to the District Court for the City and County of Denver is warranted. [*Id.* at 3–4]. United disagrees, and argues that its ripeness challenge

encompasses *all* damages sought by Plaintiffs. [#33 at 3]. Further, Defendant argues that the rule against claim splitting counsels against dismissing some claims while allowing others to proceed. [*Id.* at 4]. For the following reasons, this court concludes that, regardless of the disposition of United's Motion to Dismiss, federal subject matter exists.

For purposes of diversity jurisdiction, the amount in controversy "is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). In removal actions it is the defendant's burden to prove "jurisdictional facts that make it possible that $75,000 is in play." *Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1106 (D.N.M. 2017) (quoting *id.* at 955). There is no dispute that Defendant satisfied this initial burden based on Plaintiffs' Amended Complaint and civil cover sheet, both of which indicated that the amount in controversy well exceeded the $75,000 requirement. *See Paros Properties LLC v. Colorado Cas. Ins. Co.*, 835 F.3d 1264, 1272–73 (10th Cir. 2016) (holding that a state civil cover sheet indicating a judgment over $100,000 is sought was sufficient to satisfy amount in controversy); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) ("The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal.").

Plaintiffs' argument, however, focuses on the amount in controversy should the court *grant* United's Motion to Dismiss. But what matters most for diversity jurisdiction is "the condition of the parties . . . as it was at the *commencement* of the suit." *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006) (citations and internal quotation marks omitted) (emphasis added); *accord Naegele v. Albers*, 110 F. Supp. 3d 126, 141 (D.D.C. 2015) ("The amount in controversy is established at the commencement of the action." (brackets, citations, and internal

quotation marks omitted)). That is, if the amount in controversy is satisfied at the commencement of the suit, including upon removal, "jurisdiction has attached, [and] events subsequently defeating it by reducing the amount in controversy are unavailing." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998). "A distinction must be made . . . between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Watson v. Blankinship*, 20 F.3d 383, 387 (10th Cir. 1994).

Thus, because the amount in controversy was satisfied at the time of removal, the disposition of Defendant's Motion to Dismiss will have no effect upon the court's subject matter jurisdiction. I now turn to the Motion to Dismiss.

## II.     The Motion to Dismiss

As mentioned, Defendant moves to dismiss Plaintiffs' Amended Complaint, because Plaintiffs' claims are not yet ripe given Defendant's pending appeal to the Colorado Court of Appeals. Alternatively, Defendant requests the court stay this matter pending its appeal. *See* [#12; #23]. It is important to note that Defendant's instant Motion does not focus on the substance of its appeal but, rather, its effect, if any, on the ripeness of Plaintiffs' claims in this matter. In considering the Motion to Dismiss, then, I focus only on whether Plaintiffs' claims are ripe or, alternatively, whether a stay is warranted, given United's pending appeal. The merit of United's appeal is not before or considered by this court.

Upon review of the applicable case law, and the record before the court, I conclude that a successful appeal *could* have the effect of vacating the judgment in the Underlying Action, thereby granting United the right to argue the merits of its opposition to the Agreement and subsequent arbitration award—the bases for Plaintiffs' claims. *See Cherokee Metro. Dist. v.*

*Meridian Serv. Metro. Dist.*, 266 P.3d 401, 408 (Colo. 2011) (reversing the denial of a motion to intervene as a matter of right, and vacating the declaratory judgment entered to give the intervenors the right argue the merits of their position); *accord Sanguine, Ltd. v. U.S. Dep't of Interior*, 798 F.2d 389, 391 (10th Cir. 1986) ("[T]his case presents a unique situation in which prejudice to the intervenors can be avoided only by setting aside the prior judgment and allowing the opportunity to litigate the merits of the case."). Thus, while Plaintiffs' assertions that "there has been no appeal of the judgment entered against the insured[,]" *see* [#22 at 10–11] is technically correct, United's appeal collaterally attacks the judgment in the Underlying Action in that success on appeal could result in the judgment being set aside. With this understanding in mind, this court first articulates its understanding of the claims asserted in this action, followed by a discussion as to whether such claims are ripe, and concludes with a recommendation that this matter be dismissed without prejudice for want of subject matter jurisdiction.

**A.      Plaintiffs' Claims**

In considering United's Motion to Dismiss it is imperative to understand the claims Plaintiffs assert in this matter. The Amended Complaint asserts two claims against United: (1) breach of contract and (2) bad faith breach of an insurance contract ("bad faith"). *See* [#7].

***Breach of Contract.*** As discussed above, this court's reading of the Amended Complaint reveals that Plaintiffs' breach of contract claim is based on a purported failure to indemnify Lyon Trucking and Mr. Kubby, including the payment of the judgment entered against them, pursuant to the terms of the insurance policy. *See* [*id.* at ¶¶ 33–41]. This claim requires Plaintiffs to establish (1) the existence of a contract; (2) their performance of its contractual obligations or their justification(s) for non-performance; (3) United's failure to perform; and (4) their damages.

*See Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1243 (D. Colo. 2013) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

***Bad Faith.*** Plaintiffs' bad faith claim is three-fold—it alleges Defendant acted unreasonably by failing to appropriately investigate the claim by Plaintiffs and defend Lyon Trucking and Mr. Kubby, to indemnify Lyon Trukcing and Mr. Kubby, and to settle Plaintiffs' claims for the $1,000,000 policy limit. *See* [#7 at ¶¶ 42–48]. Unlike commercial contracts, Colorado courts recognize a separate action sounding in tort for breaches of the implied duty of good faith and fair dealing of an insurance contract, *i.e.*, bad faith breach of an insurance contract. *See, e.g.*, *Hiatt v. Schreiber*, 599 F. Supp. 1142, 1145 (D. Colo. 1984) ("Colorado courts have followed the trend established in California recognizing a separate cause of action sounding in tort for bad faith breach of insurance contracts."). Such claims can arise in a first-party or third-party context. *See Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 421 (Colo. 1991).

"First-party bad faith cases involve an insurance company refusing to make or delaying payments owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto insurance." *Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 414 (Colo. 2004) (explaining, "[t]he insurer's actions expose the insured to being personally liable for the monetary obligations underlying the insured's claims."). In contrast, "[t]hird-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Id.* Here, Plaintiffs' bad faith claim arises in the third-party context pursuant to the Agreement assigning Lyon Trucking and Mr. Kubby's claims against United to Plaintiffs, and is based on United's alleged failures in adjusting and paying claims brought by Plaintiffs against

Lyon Trucking and Mr. Kubby. *See* [#7 at ¶¶ 42–48]; *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010) (explaining that an example of a third-party bad faith claim included when the plaintiff, acting as the insured's assignee, sued the insurance carrier for unreasonably failing to settle the plaintiff's personal injury claim against the insured).

Plaintiffs do not directly address the third-party context of their bad faith claims against United based on the failure to properly investigate, defend, or settle a claim, but implicitly concede it. *See* [#22 at 12 ("The Colorado Supreme Court has held that entry of a judgment is not a prerequisite to ripeness when an insured claims its insurer acted in bad faith in the defense of the insured (as opposed to in failing to settle claims against the insured") (citation omitted)]. Instead, Plaintiffs' arguments insist that Defendant failed to address the additional damages sought for its "bad faith decision in controlling the defense of its insureds to bifurcate potentially covered claims from potentially non-covered claims and the stress, damage to reputation and damage to credit" incurred by Lyon Trucking and Mr. Kubby, which do not require a final judgment, because that harm has already accrued and is actionable regardless of the outcome of the appeal. [2] *See* [#22 at 12].

## B.    Ripeness of Plaintiffs' Claims

The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1). *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). The ripeness doctrine reflects an important prudential limitation on the court's exercise of jurisdiction—the inquiry focuses on whether the alleged harm has

---

[2] It is not clear that Plaintiffs are arguing that these theories of liability are first-party claims between United and its insureds—Lyon Trucking and Mr. Kubby. Plaintiffs do not use that terminology in their distinction between theories. [#22 at 12]. But as discussed in more detail below, Plaintiffs rely upon *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 148 (Colo. 2007), a case arising in the first-party context, to contend that these injuries occurred regardless of the final outcome of the Underlying Action or the currently pending appeal.

matured sufficiently to warrant judicial intervention.  *See Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) ("Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." (citations and internal quotation marks omitted)).  "When assessing ripeness, we must 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).  Because Defendant first addresses and focuses on Plaintiff's bad faith claim, the court will follow suit despite the order in which the claims are pleaded in the Amended Complaint.

*Bad Faith:*  Because Plaintiffs' bad faith claim sounds in tort, such claims accrue when the insured knew or should have known that the insurer acted unreasonably and the insured suffers an injury.  Colo. Rev. Stat. § 13-80-108(1).  "Colorado law provides that in the context of an unreasonable failure to settle, the injury to the insured cannot be 'known' pursuant to § 13[-]80-108(1) until a final judgment [is rendered] as to the insured's liability."  *Larson v. One Beacon Ins. Co.*, No. 12-CV-03150-MSK-KLM, 2015 WL 1539173, at *3 (D. Colo. Mar. 31, 2015) (citing *Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th Cir. 1982) (holding under New Mexico law that a third-party failure to settle claim accrues only after a final judgment establishes the insured's excess liability)) (further citations omitted).  Defendant avers that no final judgment as to Lyon Trucking and Mr. Kubby's excess liability (an amount greater than the $1,000,000 policy limit) has been rendered in the Underlying Action given its appeal to the Colorado Court of Appeals.  *See* [#12 at 11; #23 at 3–6].  According to Defendant, Plaintiffs cannot know of their injury for purposes of their bad faith claim until there is a final and non-appealable judgment establishing excess liability.  *See* [#12 at 11; #23 at 3–6].

In support of its position, Defendant relies on *Vanderloop v. Progressive Casualty Insurance Company*, 769 F. Supp. 1172 (D. Colo. 1991). The facts of *Vanderloop* are analogous to this matter: Mr. Vanderloop was involved in a traffic collision with a third party, who then sued Mr. Vanderloop in state court for negligence; Progressive Casualty Insurance Company ("Progressive") refused offers to settle the negligence action for the policy limit of $25,000, and a jury returned a verdict against Mr. Vanderloop for $100,000; Progressive appealed the jury verdict, but the Colorado Court of Appeals affirmed the verdict on December 1, 1988; and on January 31, 1990, Mr. Vanderloop brought suit against Progressive for bad faith failure to settle the negligence action that exposed him to excess liability. *Id.* at 1173. Progressive moved to dismiss Mr. Vanderloop's bad faith claim as barred by the statute of limitations. The court rejected this argument and held, "When . . . the economic injury alleged is the actual imposition of an excess liability judgment on the insured, the harm or damages element of the bad faith tort claim necessarily remains uncertain and speculative until final judgment on *appeal* either establishes that exposure or dissolves any liability." *Id.* at 1175 (emphasis added). The court thus concluded, consistent with the United States Court of Appeals for the Tenth Circuit and the Colorado Supreme Court, that Mr. Vanderloop did not know of his alleged injury for purposes of his failure to settle bad faith claim until a final, non-appealable judgment established the amount of excess liability. *Id.*

Plaintiffs counter that *Vanderloop* is not binding authority on the issue of ripeness, as the Colorado Supreme Court has since "superseded" *Vanderloop* with its decision in *Nunn v. Mid-Century Insurance Company*, 244 P.3d 116 (Colo. 2010). [#22 at 8–9]. But as discussed above, Plaintiffs appear to concede that at least some of their theories of bad faith arise in the third-party

settlement context. [#22 at 12]. Upon consideration, I conclude that Plaintiffs' reliance on *Nunn* is misplaced.

In *Nunn*, the Colorado Supreme Court considered "whether a pretrial stipulated judgment coupled with a covenant not to execute can serve as the basis for a claim of damages in an action for bad faith breach of an insurance contract." *Nunn*, 244 P.3d at 118. Ms. Nunn was the assignee of the insured's claims against its insurer in exchange for Ms. Nunn's covenant not to enforce the stipulated judgment against the insured, but to seek to recover that judgment through subsequent litigation against the insurer. *Id.* at 118–19. The Colorado Court of Appeals concluded that Ms. Nunn failed to establish the requisite damages for a bad faith claim, because the insured would never be subject to excess liability due to the covenant not to enforce the stipulated judgment against the insured. The Colorado Supreme Court reversed, and "adopt[ed] the judgment rule and conclude[d] that an insured who has suffered a judgment in excess of policy limits, even if the judgment is confessed and the insured is protected by a covenant not to execute, has suffered actual damages and will be permitted to maintain an action against its insurer for bad faith breach of the duty to settle." *Id.* at 122. The Colorado Supreme Court held this to be true because, even if the insured could or would pay the excess liability judgment, entry of an excess liability judgment still harms the insured in other ways. *Id.*

Plaintiffs argue that *Nunn* supersedes any requirement that the excess liability judgment be final and non-appealable; rather, it is sufficient that such a judgment exists. [#22 at 8–9]. But this court does not read *Nunn* as broadly as Plaintiffs suggest. From this court's reading, it appears that *Nunn* addresses a party's *standing* to bring a claim, not a claim's *ripeness*. While standing and ripeness are "twin questions" affecting the justiciability of an action before this court, *see Morgan v. Cotter*, 365 F.3d 882, 887 (10th Cir. 2004), there are important distinctions

between them as well. Standing addresses whether there is an actual case or controversy, *i.e.*, whether plaintiff (1) has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citation and internal quotation marks omitted). Ripeness assumes standing but includes a time dimension, asking *when* the proper party can assert the claim. *Id.* at 1157.

The Colorado Supreme Court in *Nunn* addressed whether a third party accepting an assignment of a bad faith claim from an insured has a viable claim when the judgment is confessed and the insured is protected by a covenant not to execute. *Nunn*, 244 P.3d at 121, 122–23. The *Nunn* court found that, despite the fact that the insured faced no personal exposure to the judgment, there was still actual harm separate from the excess judgment. *Id.* at 122. Put another way, regardless of the insured's lack of pecuniary harm from the excess judgment, there was an independent injury-in-fact to confer standing. There was no discussion as to when the claim accrued for purposes of ripeness; rather, the inquiry focused solely on whether a judgment could serve as a basis for damages despite the fact that the insured would never have to pay that judgment due to a covenant not to enforce. Thus, *Nunn* does not resolve the issue of ripeness before this court.

Nothing about *Nunn* persuades this court that Plaintiffs' bad faith claim arising from Defendant's failure to settle is ripe before a final, non-appealable judgment establishes either the excess liability or dissolves any liability. *Vanderloop*, 769 F. Supp. at 1175. This remains so even if the judgment in the Underlying Action is final for purposes of an appeal, *see State ex rel.*

*Suthers v. CB Servs. Corp.*, 252 P.3d 7, 10 (Colo. App. 2010) (discussing final judgment for purposes of appellate court jurisdiction), or if the judgment is enforceable pending appeal, *see Thane v. Geico Cas. Co.*, 2017 WL 4848818, at *3 (D. Colo. July 28, 2017) (concluding that the ability to execute a judgment "does not mean that the judgment was final for purposes of [a] bad faith [failure to settle claim]"; rather, "the injury transpires once the judgment becomes final and non-appealable." (citing *Vanderloop*, 769 F. Supp. at 1175)). This comports will both the "majority rule of courts in other states [] that a bad-faith failure-to-settle claim accrues when the excess judgment becomes final and non-appealable" and "[l]eading insurance law treatises and practice guides." *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1276–77 (Del. 2016) (collecting cases and treatises) (footnotes omitted); *accord Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1095–96 (Ariz. 1996) (highlighting the jurisdictions that have held bad faith failure to settle claims accrue once a judgment is final, and adopting "the rationale expressed in *Vanderloop*").[3]

In addition to asserting bad faith arising directly from United's failure to settle Plaintiffs' claims, Plaintiffs also focus on United's failure to properly defend Lyon Trucking and Mr. Kubby, *e.g.*, its decision to bifurcate covered from non-covered claims, its failure to communicate appropriately with Lyon Trucking and Mr. Kubb, and its failure to reasonably investigate Plaintiffs' claims against Lyon Trucking and Mr. Kubby. [#7 at ¶ 44]. Plaintiffs also

---

[3] Though not argued by either Party, this conclusion applies equally to Plaintiffs' bad faith failure to indemnify claim, because such a claim does not accrue until a final judgment has been imposed on the insured. *See Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 228–29 (Colo. App. 2002) ("Plaintiff could not have asserted a bad faith claim based on failure to indemnify prior to the entry of the Sauters' judgment because before that time Allstate had no duty to indemnify him"), *abrogated on other grounds as recognized by Brodeur v. American Home Assurance Company*, 169 P.3d 139, 148 (Colo. 2007). Because nothing suggests that the final, non-appealable judgment requirement articulated in *Vanderloop* is inapplicable to bad faith failure to indemnify claims, this court concludes that, to the extent Plaintiffs' bad faith claim is predicated on a failure to indemnify, it is also unripe pending United's appeal.

separately identify the stress, damage to reputation, and damage to credit based on the entry of the judgment itself. *See* [#22 at 12]. Plaintiffs argue that these theories are independent of United's bad faith refusal to settle, and point to the Colorado Supreme Court's decision in *Brodeur* to support their argument. *Brodeur*, 169 P.3d at 148. But *Brodeur* is not directly on point, as it involved a first-party bad faith claim based on an insurer's unreasonable delay and/or refusal to provide benefits. The *Brodeur* court found that under such circumstances, the insured's injury is "not dependent on the outcome of any other action." *Brodeur*, 169 P.3d at 148 (distinguishing *Vanderloop*, but citing it approvingly as to the accrual of failure to settle claims). In contrast, Plaintiffs' allegations of wrongdoing in the handling of the investigation and defense of Lyon Trucking and Mr. Kubby fall squarely within the Colorado Supreme Court's articulation that "[t]hird-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Nunn*, 244 P.3d at 119. It thus follows that these theories are just variations on a theme that United acted in bad faith when it refused to settle, and are not ripe until the final judgment is entered and non-appealable.

**Breach of Contract:** Breach of contract claims accrue "'on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence.'" *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1121 (10th Cir. 2005) (quoting Colo. Rev. Stat. § 13-80-108(6)). Defendant contends that Plaintiffs' breach of contract claim is equally unripe for the reasons discussed above. That is, Plaintiffs' breach of contract claim relies primarily on United's conduct complained of in their bad faith claim, and, because that claim is unripe, so too is Plaintiffs' breach of contract claim. *See* [#12 at 12]. In support of its argument, Defendant

relies on *Swinerton Builders v. American Home Assurance Company*, No. C-12-6047 EMC, 2013 WL 1122022, at *1 (N.D. Cal. Mar. 15, 2013).

Largely, Defendant's argument focuses on the damages associated with Plaintiffs' breach of contract claim, which United argues are not ripe for want of a final judgment in excess of the policy limit. As discussed above, this court's review of the Amended Complaint indicates that, while the supporting paragraphs as to the breach of contract claim refer to Defendant's obligation to defend and "provide competent counsel to advocate for Mr. Kubby and Lyon Trucking, Inc.'s best interests," [#7 at ¶¶ 35–36], the breach of contract claim asserted arises not from a failure in defense but in "failing and refusing to indemnify Mr. Kubby and Lyon Trucking, Inc. for any portion of the judgment entered against them in the Underlying Lawsuit." [*Id.* at ¶ 39].

The duty to indemnify arises only when the policy actually covers the harm, and typically cannot be determined until the resolution of the underlying claims. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003); *Auto-Owners Ins. Co. v. High Country Coatings, Inc.*, 261 F. Supp. 3d 1129, 1134 (D. Colo. 2017) (citing *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1086 (Colo. 1991) (observing that the duty to indemnify only becomes ripe after liability of the insured in the underlying action has been determined)). In this case, it follows that United may have no duty to indemnify if the Colorado Court of Appeals in the Underlying Action sides with it on the issue of intervention and vacates the arbitration judgment. *See supra*, pp. 8–9. Though the precise circumstances are different, the reasoning reflected in *Vanderloop* appears equally applicable by extension to Plaintiffs' breach of contract claim for failure to indemnify, *i.e.*, until the judgment in the Underlying Action becomes final and non-appealable, Plaintiffs' breach of contract claim for a failure to indemnify is not yet ripe.

*** *

Based on the foregoing, I respectfully RECOMMEND that the Motion to Dismiss be GRANTED and this action be DISMISSED WITHOUT PREJUDICE. For the sake of completeness, I now consider Defendant's alternative request for relief—whether a stay of the instant matter is warranted pending the outcome of United's appeal.

## III.    Alternative Relief to Dismissal

Once the court determines that it lacks subject matter jurisdiction, it is divested of authority to act on any other matter. *See Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) (holding that once a federal court determines that it is without subject matter jurisdiction, it must not proceed to consider any other issue). However, in recognition that Judge Arguello could decline to adopt all or part of this court's Recommendation as to ripeness, I turn to United's alternative request for a stay. In the alternative to dismissal, United seeks a stay of this matter until the disposition of its appeal to the Colorado Court of Appeals. *See* [#12 at 12–17; #23 at 7–8]. Plaintiffs vehemently oppose this alternative relief. *See* [#22 at 12–16]. For the following reasons, to the extent that subject matter jurisdiction exists over some, but not all of the claims, this court respectfully RECOMMENDS that this matter be administratively closed pending the outcome of United's appeal.

Whether to stay a matter is left to the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (recognizing that the power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931))). Although courts in this District generally disfavor stays, a stay may be appropriate

under the circumstances. *See Wason Ranch Corporation v. Hecla Mining Co.*, No. 07-cv-00267-EWN–MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007). In determining the prudence of a stay, courts weigh the following factors: (1) the plaintiff's interests in expeditiously litigating this action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

Relatedly, administrative closure pursuant to D.C.COLO.LCivR 41.2 may be appropriate when a case would otherwise be stayed for an indefinite amount of time, subject to reopening for good cause. *See, e.g.*, *Mauchlin v. Zhon*, No. 12-cv-01449-RM-BNB, 2015 WL 479042, at *1 (D. Colo. Feb. 3, 2015) (administratively closing case "subject to reopening for good cause subsequent to Plaintiff's vision problems being addressed"). Indeed, administrative closure is construed as "the practical equivalent of a stay." *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987). And it is a way for the court to manage its docket by "shelv[ing] pending, but dormant, cases[]" without a final adjudication. *See Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999).

First, Plaintiffs have an interest in expeditiously litigating this matter and may be prejudiced by the further delay in recovering the judgment entered in the Underlying Action. But Defendant does not seek an indefinite stay that cannot be reconsidered in the coming months. Rather, Defendant seeks a limited stay tied to the adjudication of an appeal in not only a different court, but a different court system. Accordingly, the first *String Cheese* factor is neutral.

As to the burden on Defendants, both sides face the potential for undue burden in litigating piecemeal claims if some or all of Plaintiffs' claims are not yet ripe. Indeed, as noted above, if the Colorado Court of Appeals agrees with Defendant regarding intervention, it may vacate the judgment entirely. And, depending on the particular bases, arguments, and relief sought by Defendants and Plaintiffs on appeal, the claims in this action may be altered or eliminated, such that both sides and this court may have to adjust the scheduling, discovery, and scope of this proceeding. The second *String Cheese* factor therefore favors a stay.

For these same reasons, factors three and four also counsel in favor of a stay. Without passing on the merits of United's appeal, this court concludes that a stay under the circumstances avoids piecemeal litigation, the danger of inconsistent federal and state decisions, and avoids involving Lyon Trucking and Mr. Kubby who are not represented in the instant matter, but who are central to the Underlying Action, until there is more certainty as to the scope of the claims and the associated discovery. *See Hawg Tools, LLC v. Newsco Int'l Energy Servs., Inc.*, No. 14-cv-03011-REB-MJW, 2015 WL 1087051, at *2 (D. Colo. Mar. 9, 2015) (finding the third and fourth *String Cheese* factors warranted a stay pending the outcome of an appeal to the Colorado Court of Appeals in a related case, because that appeal "w[ould] be determinative of a large part of this action[]" and, thus, "judicial economy warrant[ed] judicial patience."). The fifth factor is largely neutral.

Accordingly, this court concludes that a stay is warranted under the circumstances. Further, because the Parties are unclear when the Colorado Court of Appeals will issue its decision, this court also concludes that administrative closure is more appropriate than a stay. *See Blair v. Fred Loya Ins. Co.*, No. CV15CV02397CMAKLM, 2015 WL 9487979, at *2–3 (D. Colo. Dec. 10, 2015) (concluding that a stay was warranted under facts nearly identical to this

action, and recommending administrative closure pending the outcome of the defendant's appeal to the Colorado Court of Appeals). Administrative closure will appropriately preserve all of Plaintiffs' claims and will serve judicial economy in that the Colorado Court of Appeals' decision may "narrow the scope of this suit and streamline the issues to be determined," or even potentially moot some of Plaintiffs' claims. *See Hawg Tools, LLC*, 2015 WL 1087051, at *2. In addition, under the Local Rules of this District, any Party may seek to reopen the case for good cause at an appropriate time.

## CONCLUSION

For the reasons stated herein, I respectfully **RECOMMEND** that:

(1) Defendant United Fire & Casualty's Rule 12(b)(1) Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings be **GRANTED** [#12].

**ALTERNATIVELY**, to the extent that Judge Arguello finds that subject matter jurisdiction exists over some, but not all, of the claims asserted, this court respectfully **RECOMMENDS** that

(2) This case be **ADMINISTRATIVELY CLOSED**, subject to reopening for good cause, following the disposition of United's appeal to the Colorado Court of Appeals.[4]

---

[4] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

DATED: March 5, 2018                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).